# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY J. TALMO )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. )<br>) | CASE NO. 09 C 7112<br><br>Judge Robert M. Dow, Jr. |

## AMENDED MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary reversal [11], filed by Plaintiff Anthony J. Talmo, seeking judicial review of a decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration, denying Talmo's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff asks the Court to reverse the decision of the Administrative Law Judge denying him benefits or, alternatively, remand for further proceedings. Defendant filed a memorandum in support of the Commissioner's decision [31]. For the following reasons, the Court remands this matter for further proceedings consistent with this opinion.

## I. Procedural Background

On March 9, 2007, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income alleging an onset date of January 20, 2005. See Administrative Record at 387-93, 394-99.[1] Plaintiff's applications were denied initially and upon reconsideration, and a request for hearing was timely filed. On April 13, 2009, Plaintiff

---

[1] Unless otherwise indicated, all references in Sections I and II refer to the administrative record in this matter.

1

appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). R. at 370-84. In a decision dated May 14, 2009, the ALJ entered a partially favorable decision, which included the following findings:

1. The claimant met the insured status requirements of the Social Security Act on January 20, 2005, the alleged onset of disability, and has not subsequently engaged in substantial gainful activity (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

2. The claimant has a severe spinal impairment, along with hypertension and obesity (20 CFR 404.1520(c) and 416.920(c)).

3. From January 20, 2005 through May 26, 2006, the claimant's spinal impairment met the criteria of section 1.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

4. The claimant was under a disability, as defined by the Social Security Act, from January 20, 2005 through May 26, 2006 (20 CFR 404.1520(d) and 416.920(d)).

5. Medical improvement occurred as of May 27, 2006 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

6. Since May 27, 2006, the claimant has not had an impairment or combination of impairments that meet or medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i).

7. As of May 27, 2006, the claimant had experienced medical improvement related to the ability to work because he no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).

8. Since May 27, 2006, the claimant has the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a).

9. Through May 27, 2006, the claimant remained incapable of performing past relevant work (20 CFR 404.1565 and 416.965).

10. The claimant, born on December 22, 1981, is defined as a younger individual at all times relevant (20 CFR 404.1563 and 416.963).

11. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

12. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

13. Since May 27, 2006, considering the claimant's age, education, work experience, and residual functional capacity, he has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

14. The claimant's disability ended on May 27, 2006 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

R. at 341-53.

Plaintiff sought review of the ALJ's decision and the Appeals Council denied his request, leaving the ALJ's decision the final decision of the Commissioner. R. at 1-5. Plaintiff now seeks judicial review of the final decision of the Commissioner of Social Security. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**II.    Facts**

  **A.    Background**

Plaintiff, born on December 22, 1981, was twenty-two years old at the time he applied for DIB and SSI.  R. at 387.  Plaintiff reported a tenth-grade education.  R. at 421.  He has worked cleaning floors, stocking shelves, receiving merchandise, doing roofing installment and shipping-receiving for a printing company.  R. at 416-17, 424.

  **B.    Medical Evidence**

On January 20, 2005, Plaintiff suffered a back injury while at work at a printing company.  R. at 315-16.  Five days later, Plaintiff had an MRI of his lumbar spine, which revealed herniation of the L4-L5 disc to the right side and herniation of the L5-S1 disc to the left side.  R. at 493.  In August 2005, Plaintiff underwent another MRI that revealed minimal indentation upon the thecal sac on the right at L1-L2 and L2-L3 possibly due to minimal bulging.  R. at 489.  Additionally, at L3-L4 the MRI showed a diffuse disc bulge along with a new central tiny disc herniation.  R. at 490.  This did not result in any spinal stenosis and no definite neural foraminal narrowing was appreciated.  R. at 490.  At L4-L5, there was a right-sided herniation effacing the right L5 nerve root and L5-S1 as well as a left-sided disc herniation compressing the left S1 nerve root.  R. at 490.

On September 13, 2005, Dr. Craig Popp at Delnor-Community Hospital performed a microscopic lumbar discectomy at L5-S1 left and L4-S right.  R. at 573.  A subsequent MRI revealed a small amount of disc material in the right paracentral region, which may cause minimal mass effect in the region of the right lateral recess.  R. at 600.  In October 2005, Plaintiff stated that the pain in this right leg was worse than before the surgery, which Dr. Popp attributed to a large osteophyte that was taken down posteriorly on the right side.  R. at 597.  Dr.

Popp noted that his left side was significantly better. *Id*. His treatment included physical therapy sessions that were terminated in November 2005, prior to completion. R. at 503.

In December 2005, Dr. Popp performed a lumbar myelogram with CT of the lumbar spine & 3-D image reconstruction. R. at 571. This revealed bulging discs and spurs at L4-L5 and L5-S1. There was no central spinal stenosis or focal foraminal stenosis, but there was compression on the descending portion of the right L5 nerve root and left S1 nerve root. R. at 572. Plaintiff continued to complain of back pain through March 2006. R. at 588. He was diagnosed with post laminectomy syndrome. *Id*. His treatment included a revert loading lumbar spine brace. *Id*.

In April 2006, Plaintiff was still complaining of pain, primarily in his back, and Dr. Popp indicated that a Functional Capacity Evaluation ("FCE") would be helpful. R. at 587. The FCE was conducted on April 12 and 14, 2006 by Stacey Bennett, a physical therapist. R. at 633. Bennett concluded that Plaintiff's lifting ability was in the sedentary to light physical demand level and that Plaintiff was generally deconditioned with limited endurance. R. at 632. Bennett also noted that Plaintiff had a decreased tolerance for static sitting and standing. *Id*. She identified his static sitting and standing tolerance as 6-33% of an eight-hour workday each, and that he could walk for 6-33% of an eight-hour workday. R. at 636. Bennett recommended a work conditioning program. R. at 633.

Dr. Popp examined Plaintiff after his FCE. R. at 586. Plaintiff remained unchanged regarding reflexes. *Id*. Bilateral Achilles, wrist extension, plantar flexion and EHL were all 2+ which is normal. Dr. Popp noted that the FCE showed Plaintiff to be capable of a light sedentary job and recommended work hardening, which Dr. Popp thought would be helpful. *Id*.

During an evaluation of Plaintiff on May 26, 2007, Dr. Popp noted that a sedentary job with vocational rehabilitation and pain management would be beneficial to Plaintiff. R. at 584. Additionally, Dr. Popp stated that he felt Plaintiff had reached Maximum Medical Improvement ("MMI") and that any type of surgical intervention would not be beneficial. R. at 584. Dr. Popp reported that Plaintiff could perform a sedentary job as defined by the U.S. Department of Labor. R. at 615.

One year later, in May 2007, Dr. Roopa K. Karri performed a consultative examination of Plaintiff. R. at 749-53. Plaintiff stated that he had a history of low back pain, hypertension, headaches, drowsiness, right eye near total blindness, depression and anxiety. R. at 750. Plaintiff stated that medication and physical therapy did not help with the pain in his back which continued to radiate to his left buttock and both legs. *Id*. He stated the pain is aggravated with activity. *Id*. Dr. Karri performed a musculoskeletal examination, which revealed that Plaintiff was able to get on and off the exam table. R. at 751. He could not walk fifty feet without support. *Id*. Plaintiff walked with a cane and could not heel/toe walk or squat. R. at 752. Plaintiff's grip strength was normal and he could make fists and oppose fingers. *Id*. He had normal range of motion in his shoulders, elbows, wrists, hips, knees, ankles, and cervical spine. *Id*. His range of motion in the lumbar spine was limited. *Id*. Dr. Karri concluded that Plaintiff had a history of low back pain with markedly decreased range of motion and required a cane to walk. *Id*. Additionally, he had right eye blindness secondary to a prior injury, a history of depression and anxiety which was improved with Paroxetine, a history of hypertension which was improved with medication and morbid obesity. *Id*.

On September 24, 2007, Dr. Richard Bilinsky, pursuant to an Illinois Request of Medical Advice, submitted that he reviewed all of the evidence in the record and affirmed the RFC dated

June 13, 2007 as written. R. at 777-79. Additionally, Terry McConnell, Disability Examiner, recited medical information from the June 13, 2007 RFC assessment. R. at 448. McConnell concluded that given the medical records, sedentary work must be considered. R. at 448.

    **C.**    **The Hearing on April 13, 2009**

At the time of the hearing on April 13, 2009, Plaintiff was twenty-seven years old. R. at 314. Plaintiff testified that he was still having a lot of back discomfort and that the physical therapy and work hardening did not help. R. at 319. He also stated that he always feels pain in both of his legs. *Id*. Plaintiff testified that he had trouble standing in the shower after five to ten minutes. He drives a car and goes alone to the store about one time per month. R. at 321. At home, he watches his son and sits on the couch. R. at 323. He testified that he can comfortably lift five pounds and can walk approximately 50 to 100 feet. *Id*. He stated he could walk a flight of about five steps but chooses elevators and has pain when sitting for a long time. *Id*. At the time of the hearing, Plaintiff was taking Paxil for anxiety and depression and Diovan for high blood pressure. R. at 322. He testified that overall he feels as though things are getting worse. R. at 323.

The ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. During the hearing, the ALJ posed a series of hypothetical questions to a vocational expert ("VE"), Thomas Gustloff. First, the ALJ asked the VE to consider an individual with the same work experience, age, and education level as Plaintiff. R. at 329-30. This hypothetical individual had blurriness in his right eye and was limited to light and sedentary work. R. at 330. He was also subject to postural limitations against climbing ladders, ropes, or scaffold, or more than occasional balancing, kneeling, stooping, crouching, crawling, and climbing of ramps and stairs. *Id*. The VE testified that this

hypothetical individual could perform work as a stock clerk, where there are 54,210 positions available in the Chicago Metropolitan area, or as an expediting clerk, where there are 8,030 positions available in the Chicago Metropolitan area. R. at 330-31.

Next, the ALJ added the limitation that the hypothetical individual needed to be able to alternate sitting and standing periodically and should not be required to stand for more than twenty minutes or to sit for more than forty minutes at a time. R. at 331. The VE testified that this additional restriction required a sedentary job compared to the light level positions previously identified. R. at 331. The VE noted that the Plaintiff would be limited to sedentary and unskilled positions. *Id*. To this hypothetical, the VE testified that this person would be capable of performing work as (1) a production work, where there are 20,830 general production work positions available, (2) a final assembler, where there are 11,880 positions available, or (3) an electronic assembler, where there are 6,150 positions available. R. at 331-32. All positions that the VE testified to are in the Chicago Metropolitan area. R. at 332.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. See *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and were made under the correct legal standard. See *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. See *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); see also *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## IV. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if so, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); see also *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id.* at 1000; see also *Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## V. Analysis

Plaintiff argues that the ALJ committed reversible error by: (1) finding that Plaintiff was not credible as to his statements regarding the intensity, persistence and limiting effects of his symptoms after May 27, 2006; and (2) determining that the Plaintiff's disability ended on May 27, 2006.

### A. Credibility Determination

Plaintiff argues that the ALJ erred in determining that Plaintiff's statements regarding his pain and other symptoms after May 27, 2006 were not credible. The Commissioner claims, on the other hand, that the ALJ properly considered the evidence to reach a credibility finding and adequately articulated the reasons behind his determinations. The Court agrees with Plaintiff.

The Social Security Regulations provide that in making a disability determination the Commissioner will consider a claimant's statements about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. See 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of

disability. See *id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statements about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. See SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

The Seventh Circuit has maintained a highly deferential standard of review regarding an ALJ's credibility determination, requiring that they not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states that he or she is unable to work. See *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, the determination of credibility finding "must contain

specific reasons for the finding on credibility, supported by evidence in the case record and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p; see also *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). The finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning. *Arnold,* 473 F.3d at 822.

Here, the ALJ's statement regarding Plaintiff's credibility is as follows:

> "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of the symptoms are not credible beginning on May 27, 2006, to the extent they are inconsistent with the above residual functional capacity assessment, when compared against the objective evidence and evaluated using factors in SSR 96-7p, in view of, especially, his non-pursuit of treatment and noncompliance with medications."

R. at 351.

This credibility determination is at best a "boilerplate recital," which Seventh Circuit has made clear is not enough to fulfill SSR 96-7p. See *McClesky v. Astrue*, 606 F.3d 351, 352 (7th Cir. 2010) (finding that a credibility determination that stated "based on the evidence, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but he claimant's statements concerning the intensity, persistence, and liming effects of these symptoms are not entirely credible" followed by a dissection of the claimants testimony is reversible error). Here, the ALJ did even less than in *McClesky*, failing to address in any meaningful way through the testimony he found not credible. *Id*.

The only facts the ALJ cites to in the credibility determination are (1) Talmo's non-pursuit of treatment and (2) his noncompliance with medications. While the assessment provides no further explanation on these two issues, in a prior section of the ALJ's decision he does mention

13

the lack of evidence in the record of medical treatment after July 24, 2007, and two DSS assessments that noted that the Plaintiff was not compliant with his medication. R. at 350-51.

But the Seventh Circuit has made clear that while infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding, the ALJ "must not draw any inferences" about a claimant's condition from this failure without exploring the claimant's reasons. SSR 96-7p; see also *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *McClesky v. Astrue*, 606 F.3d 351, 352 (2010) (noting the ALJ erred in basing an adverse credibility finding on Plaintiff's refusal to take certain drugs because the ALJ failed to consider they were "powerful and expensive drugs that many people are reluctant to take"); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.").

During the hearing, however, the ALJ did not question the Plaintiff about either his lack of medical treatment or his noncompliance with medications noted in the record. Rather, in response to questioning by Plaintiff's own attorney, Plaintiff explained that he did not seek medical care because his doctor said "there's nothing else he can do" and Plaintiff did not want to continue paying money "for something that they said they can't fix." R. at 325. The ALJ failed to consider this explanation in his determination. See *Neave v. Astrue*, 507 F. Supp. 2d 948, 963 (E.D. Wis. 2007) (finding it problematic that the ALJ relied on plaintiff's lack of treatment without considering his explanation to justify it).

Regarding the non-compliance with medications, Plaintiff testified that he prefers not to take Norco because it is an addictive painkiller and is "not something I want to take for the rest of my life." R. at 326. Importantly, in his determination, the ALJ completely disregarded the assertion that the pain drug that Talmo has opted not to take is a "powerful and expensive [drug]

14

that many people are reluctant to take or unable to afford." *Id.* Moreover, Talmo testified that he does take over the counter medications for his pain, which the ALJ also ignored in his assessment. R. at 326. See also *McClesky*, 606 F.3d at 352 (noting that the ALJ erred when he ignored the fact that the claimant took over the counter pain medications like Advil and Tylenol, instead of the prescription medication, which was a powerful and expensive drug). Ultimately, these omissions are detrimental to the Court's ability to assess the ALJ's credibility determination.

In short, the ALJ's boilerplate statement regarding credibility, amended by the note that his finding is based in Plaintiff's failure to seek medical treatment and non-compliance with treatment, is not enough under SSR 96-7p and Seventh Circuit precedent and left Plaintiff without the opportunity to explain himself. The ALJ's failure to discuss these explanations in his decision or further inquire with the Plaintiff regarding these issues amounts to a lack of sufficient reasoning and is reversible error. See *McClesky*, 606 F.3d at 352; *Windus v. Barnhart*, 345 F. Supp. 2d 928, 946 (E.D. Wis. 2004).

### B. Existence of Disability after May 27, 2009

Plaintiff argues that the ALJ erred in determining that Plaintiff's disability ended on May 27, 2006. Specifically, Plaintiff's allegations amount to three arguments: (1) the ALJ improperly gave Dr. Popp's medical and vocational findings controlling weight and concluded those findings were supported by substantial evidence; (2) the ALJ failed to make reference to a specific impairment as required; and (3) the ALJ improperly relied on DDS evidence without sufficient documentation in the record. Each allegation will be discussed in turn.

*1. Reliance on Dr. Popp's medical and vocational assessment*

Contrary to Plaintiff's claim, the ALJ properly relied on Dr. Popp's statements that Plaintiff had reached maximum medical improvement and was capable of sedentary work. As

Plaintiff's treating physician, Dr. Popp's opinion regarding the nature and severity of Plaintiff's injuries is entitled to controlling weight as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. 404.1527(d)(2)). Dr. Popp's conclusion that Plaintiff had reached maximum medical improvement was support by Dr. Karri's musculoskeletal examination in May 2007. This examination reflected both Plaintiff's medical successes and his continuing weaknesses. The ALJ addresses both aspects in his decision, but ultimately concluded that the Dr. Karri's assessment supported Dr. Popp's conclusion.

Additionally, the conclusion that Plaintiff was capable of sedentary work was supported by Dr. Karri's examination as well as McConnell's review of the record. R. at 752. While, Dr. Popp is not a vocational expert, his notation that Plaintiff is capable of sedentary work as defined by the Department of Labor is relevant to the ALJ's determination. See *Ulloa v. Astrue*, 611 F. Supp. 2d 796, 808 (N.D. Ill. 2009) (relying on doctor's findings that the plaintiff could perform sedentary work). Contrary to Plaintiff's suggestion, this notation is not the only piece of evidence reflecting Plaintiff's ability to do sedentary work. Namely, the ALJ also relied on the affirming hearing testimony of the VE. The testimony of the VE concluded that a hypothetical individual with Plaintiff's condition could perform sedentary work. This is evidence that the Plaintiff's argument ignores which supports the ALJ's ultimate conclusion that Plaintiff's medical improvement is related to his ability to work. Therefore, the ALJ did not err in giving the opinions of Dr. Popp controlling weight regarding Plaintiff's medical improvement or vocational abilities and in finding that Plaintiff's medical improvement was related to his ability to work.

*2. Reference to specific impairment*

Plaintiff argues that the ALJ erred in concluding that after May 26, 2007, Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment without referencing any specific impairment. R. at 351. The listings describe impairments that, as long as specific criteria are met, are deemed presumptively disabling. See 20 C.F.R. § 404.1525(a). It is the plaintiff's burden to prove his condition meets or equals each criteria in a listing impairment. *Cruz v. Astrue*, 746 F. Supp. 2d 978, 987 (2010). However, the Seventh Circuit has stated that a failure to mention the specific listing coupled with a "perfunctory analysis" could require a remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006).

As noted by the Commissioner, it is evident that in this case the ALJ is referencing the same impairment that led to Plaintiff's disability prior to May 26, 2007 and merely noting that the prior impairment no longer exists. Therefore, the ALJ's failure to mention the particular listing a second time in the decision, specifically in reference to the period after May 27, 2006, is harmless. Additionally, the ALJ's analysis of why Plaintiff no longer meets the listing criteria after May 27, 2006, although sparse, cannot be considered impermissibly perfunctory. In discussing Plaintiff's terminated disabled status, the ALJ notes medical evidence from Plaintiff's treating physician, as well as findings from Plaintiff's consultative examination, subsequent medical treatments, and Plaintiff's DDS assessments. Therefore, despite a lack of explanation of how the ALJ weighed these factors, the Plaintiff's argument that the ALJ's determination was not supported by substantial evidence fails.

*3. Insufficient Documentation*

Finally, the Court notes that the June 2007 RFC assessment, reviewed by Dr. Bilinsky and McConnell and relied upon by the ALJ, is not included in the record. Plaintiff objects to the incompleteness of the record as Plaintiff cannot respond to documents not of record. Because the Court remands on other grounds, the Court orders that, on remand, the Commissioner locate the report relied on by the ALJ and ensure that is included in the record. See *Smith v. Commissioner of Social Security*, 2010 WL 1838366, at *12 (N.D. Ind. May 6, 2010).

**C.     Remedy**

Plaintiff argues that reversal and an award of benefits is the proper remedy. In the alternative, he asks that the matter be remanded for rehearing before a different ALJ. Ordinarily, when an ALJ errs, the appropriate remedy is to remand for further proceedings. *Windus*, 354 F. Supp. 2d. at 951. The Court will only award benefits if all "essential factual issues have been resolved and the record overwhelmingly supports a finding of disability." *Id*.

In this case, the proper remedy is remand. The record at this time does not overwhelmingly support a finding of disability—the primary reason of reversal is the ALJ's failure to properly consider evidence and testimony, and failure to provide sufficient explanation for his findings.

## VI. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for summary reversal [30] and remands this matter to the Social Security Administration for further proceedings consistent with this opinion.

Dated: May 30, 2012

_____
Robert M. Dow, Jr.
United States District Judge